**Carlton L. MOORE, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 94–CM–499.**

District of Columbia Court of Appeals.

Submitted April 6, 1995.
Decided May 4, 1995.

---

Richard T. Moore, appointed by the court, Washington, DC, was on the brief for appellant.

Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Thomas J. Tourish, Jr., and Diana M. Harris, Asst. U.S. Attys., Washington, DC, were on the brief for appellee.

Before TERRY, SCHWELB, and KING, Associate Judges.

TERRY, Associate Judge:

After a non-jury trial, appellant was convicted of assault, in violation of D.C.Code § 22–504 (1989). On appeal he contends that the trial court erred in refusing to impose a sanction against the government when it failed to produce two documents which he requested under the Jencks Act. We affirm.

I

Lieutenant David Bess was a security officer employed by the Government Printing Office (GPO). He testified that he was on duty one morning at the main GPO building when he was approached by a woman who worked there. She told him that "a citizen by the name of Mr. Moore had harassed her" as she was entering the building and asked him to "do something about it." Lieutenant Bess knew Mr. Moore from similar incidents in the past, so he took three other officers and went outside to investigate the woman's complaint.

When Bess and the others saw appellant Moore in front of the building, Bess walked over to him, intending to tell him "that he could not stand there and harass people." Before Lieutenant Bess could say anything, however, Moore suddenly "became violent" and hit him in the face, causing a deep laceration. Moore struck several more

blows, knocking Bess' glasses off and making him "real dizzy." The other officers immediately came to Bess' aid and soon subdued Moore by wrestling him to the ground and putting handcuffs on him. Moore then exclaimed, "You don't have no right to tell me nothing," and began to pour forth a stream of obscenities at the officers. He also spat in one officer's face and continued to be "very violent." The officers took him inside and called the Metropolitan Police, who soon arrived and placed him under arrest. Lieutenant Bess, who was still "bleeding pretty badly," was taken by another officer to the GPO medical office to be treated for his injuries.

Moore testified that he was a former GPO employee and occasionally returned to the GPO building to "borrow" money from employees that he knew. He said that he was standing on the sidewalk outside the building when he was approached by several security officers and escorted inside for no reason. He denied assaulting Lieutenant Bess and denied uttering obscene epithets against any of the officers.

## II

 When Lieutenant Bess went to the GPO medical facility for treatment of his injuries, he filled out a form there in which he gave a short account of what had happened.[1] At trial, when defense counsel requested that this document be produced, the court held a hearing at which Bess testified that what he wrote on the form was "not … a narrative" but merely "a short brief statement [of] what occurred." It was also established that this medical report had been sent to a storage facility in Missouri and was not readily available. The court assumed that this report was a "statement" within the meaning of the Jencks Act, 18 U.S.C. § 3500 (1988).[2] The court further concluded, however, that no Jencks Act sanction was called for because the information contained in the medical report was also available in three other documents which had already been turned over to defense counsel, including one

that Lieutenant Bess had written himself (GPO Form 61–FY93).

 Appellant contends that the court was "obligated" to strike Lieutenant Bess' testimony under the Jencks Act because the government was unable to produce the medical report. We disagree. It has long been settled that "the administration of the Jencks Act must be entrusted to the 'good sense and experience' of the trial judges subject to 'appropriately limited review of appellate courts.'" *United States v. Augenblick*, 393 U.S. 348, 355, 89 S.Ct. 528, 533, 21 L.Ed.2d 537 (1969) (citing *Palermo v. United States*, 360 U.S. 343, 353, 79 S.Ct. 1217, 1225, 3 L.Ed.2d 1287 (1959)). Contrary to appellant's argument, this court has repeatedly and consistently held that the loss of discoverable Jencks Act statements "does not automatically require the imposition of sanctions." *Slye v. United States*, 602 A.2d 135, 138 (D.C.1992) (citations omitted). The trial court retains discretion in every case to decide whether sanctions are warranted after evaluating the totality of the circumstances. *E.g., Montgomery v. United States*, 384 A.2d 655, 662 (D.C.1978). Any such decision will be affirmed on appeal unless the appellant demonstrates that the trial court abused its discretion. *Slye, supra*, 602 A.2d at 138 (citing cases).

Applying these principles, we find no abuse of discretion here. The trial court carefully weighed all the factors that we have identified in such cases as *United States v. Jackson*, 450 A.2d 419, 426 (D.C.1982), and *Cotton v. United States*, 388 A.2d 865, 870 (D.C.1978). It expressly recognized that any prejudice, and hence any need for sanctions, would be substantially diminished if the information in the missing document were available from another source. *See Groves v. United States*, 564 A.2d 372, 378 (D.C.1989), *amended on rehearing on other grounds*, 574 A.2d 265 (D.C.1990); *Moore v. United States*, 353 A.2d 16, 19, *aff'd after remand*, 363 A.2d 288 (D.C.1976); *Johnson v. United States*, 322 A.2d 590, 592 (D.C.1974). The court found that there had been no bad faith or

---

1. Bess described this form as "insurance paperwork," required by personnel regulations to justify any medical leave (which he did not take).

2. We also assume, without deciding, that the report was a Jencks Act statement.

gross negligence on the part of the government in sending the document to storage in Missouri, and that any prejudice to the defense resulting from its absence would be "purely speculative" in light of the three other documents already available. On this record we can find no abuse of discretion in the trial court's refusal to impose Jencks Act sanctions for failure to produce the medical report.

### III

▮ Appellant's other Jencks Act claim is somewhat more troubling. Lieutenant Bess testified on cross-examination that he had been interviewed by two Metropolitan Police officers shortly after he was treated for his injuries, and that "they took down the information as I gave it to them." He did not recall the names of the officers. He did observe that "all police officers carry notebooks," but he did not remember whether either officer wrote down what he said in a notebook or directly onto a printed form. Defense counsel then asked the court "to find out who [in the police department] took notes directly from their conversation with Lieutenant Bess" and to inspect those notes *in camera* to determine whether they were producible under the Jencks Act. The prosecutor's response to this request was to assert that any notes taken by the police were "field notes" and that "there's no indication that they're Jencks material." Defense counsel argued that the court had "an obligation to pursue the matter by directing government counsel to speak with the police officers to determine whether or not they did take notes and whether or not there are other police reports which they filled out in [Bess'] presence." The court, however, accepted the prosecutor's argument and ruled that there had not been a sufficient showing that the police notes, assuming they could be produced, were a "substantially verbatim recital" of Lieutenant Bess' oral statement to the officers.[3] If it later developed that other documents might be producible, the court agreed to allow the defense to reopen cross-

examination, but no such documents ever materialized.

The prosecutor's argument with respect to the police notes was fundamentally flawed. He maintained that the court should deny the Jencks Act request because defense counsel had failed to establish that the notes were anything more than "field notes," and that the defense had to show that they were "substantially verbatim" before the court could require them to be produced. But that argument put the cart before the horse. The trial judge could not determine whether the notes were substantially verbatim, nor could counsel make such a showing, unless they were produced in court for the judge to examine. Moreover, under cases such as *Montgomery* and *Slye*, the burden was on the prosecutor to produce them so that the judge could make that determination. *See Hilliard v. United States*, 115 U.S.App.D.C. 86, 87, 317 F.2d 150, 151 (1963) (trial court must "conduct such inquiry as may be necessary" to ascertain whether statutory requirements have been met); *Saunders v. United States*, 114 U.S.App.D.C. 345, 348, 316 F.2d 346, 349 (1963) (trial court "has an affirmative duty to determine whether any [Jencks Act] statement exists and is in the possession of the Government and, if so, to order the production of the statement"). The prosecutor could not avoid his obligation by suggesting that defense counsel had a duty to establish that the police notes were anything more than "field notes," for defense counsel had no such duty. "The burden is not upon the defendant to prove that the statements requested are substantially verbatim recitals within the meaning of the Act." *Williams v. United States*, 117 U.S.App.D.C. 206, 208–209, 328 F.2d 178, 180–181 (1963) (citations omitted). All that the defense has to establish is "reason to believe that a statutory 'statement' may exist." *Goldberg v. United States*, 425 U.S. 94, 124, 96 S.Ct. 1338, 1354, 47 L.Ed.2d 603 (1976) (Powell, J., concurring).

---

**3.** The Jencks Act requires production at trial of any "statement" by a witness, which it defines, in pertinent part, as "a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement...." 18 U.S.C. § 3500(e)(2).

■ It has long been the law in this jurisdiction that the government has a duty to preserve Jencks Act statements and to produce them when properly called upon to do so. *Slye v. United States, supra*, 602 A.2d at 138; *Montgomery v. United States, supra*, 384 A.2d at 662; *United States v. Bryant*, 142 U.S.App.D.C. 132, 142, 439 F.2d 642, 652 (1971). It is also well established that "police notes are potentially Jencks Act statements." *United States v. Jackson, supra*, 450 A.2d at 425 (citations omitted). It was therefore the prosecutor's duty to make sure that any notes taken by the police during their investigation were preserved and made available for the court's inspection in the event of a Jencks Act request, regardless of whether any of the note-taking officers testified. Once Bess' testimony established that the police took what appeared to be more than cursory notes while they interviewed him, the prosecutor was obliged to produce those notes so that the court could determine whether they constituted a "statement" within the meaning of the Jencks Act. The court should not have accepted the prosecutor's argument that defense counsel had failed to show that the notes were substantially verba-tim, for that was a showing which defense counsel was not required to make.

We conclude nevertheless that if the trial court erred in resolving this issue, any error was harmless. As the court pointed out, defense counsel had three Jencks Act statements in her possession with which to attempt to impeach Lieutenant Bess, but the record shows that his testimony remained unimpeached. Moreover, Bess' testimony was corroborated by two of the other GPO officers, Giordano and Shellman, as well as by a photograph depicting Bess' injuries. We see no reasonable likelihood that the police notes, whatever they may have contained, could have had a significant effect on the outcome of the trial or produced a different result.

Appellant's conviction is therefore

*Affirmed.*