*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 13-CT-974

JOSUE LOPEZ AMBROCIO, APPELLANT,

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CTF-19104-12)

(Hon. Richard H. Ringell, Trial Judge)
(Hon. John Ramsey Johnson, Reviewing Judge)

(Argued April 23, 2015      Decided October 1, 2015)

*Jamison Koehler* for appellant.

*John D. Martorana*, Assistant Attorney General. *Irvin B. Nathan*, Attorney General for the District of Columbia at the time the brief was filed, *Todd S. Kim*, Solicitor General, *Rosalyn Calbert Groce*, Deputy Solicitor General, and *John W. Donovan*, Assistant Attorney General, were on the brief, for appellee.

Before THOMPSON and BECKWITH, *Associate Judges*, and KING, *Senior Judge*.

KING, *Senior Judge*: After a bench trial before Magistrate Judge Richard Ringell, appellant Josue Lopez Ambrocio was convicted of driving under the influence of alcohol (DUI), D.C. Code § 50-2206.11, and leaving after colliding

(LAC), D.C. Code § 50-2201.05. On appeal, Ambrocio argues that the trial court erred by declining to sanction the District or grant his motion for judgment of acquittal in response to the District's failure to turn over alleged *Jencks* material. Ambrocio also argues that the evidence is insufficient to sustain his convictions. We are satisfied the evidence was sufficient to support both convictions. However, we hold that the trial court erred by failing to fully inquire about the alleged *Jencks* material and we accordingly remand the case for an evidentiary hearing and further evaluation of the sufficiency of the District's *Jencks* disclosures.

## I.

On October 26, 2012, around 11:50 p.m., Natasha Miller was driving home when she encountered a car standing in the middle of the intersection at Fifth and Longfellow Streets, N.W. in the District of Columbia. Miller thought the vehicle looked as though it had been in a collision, so she and her passenger stopped to see if the man at the vehicle—later identified as Ambrocio—was injured.[1] Miller asked Ambrocio if he needed help and, instead of responding to Miller, Ambrocio began pacing around the vehicle in an "anxious" and "panic[ked]" manner.

---

[1] Miller could not remember whether Ambrocio was inside or outside of the vehicle when she first approached it. She never saw Ambrocio actually driving the vehicle or with the keys to the vehicle.

Ambrocio then entered and exited the vehicle several times, sitting in both the driver's and passenger's seats; Miller testified that Ambrocio sat in the driver's seat for approximately one minute during this time. Ambrocio also attempted to move the vehicle from the intersection and "jump" the vehicle (Miller testified that he removed the jumper cables from the vehicle). However, according to Miller, the vehicle was not "driveable."

Miller called the police, and three Metropolitan Police Department officers responded to the call. The first officer, Michael Beeler, testified that he received the call about Ambrocio's disabled vehicle while he was responding to an earlier call for a "hit and run" accident, during which a vehicle collided with and damaged several parked cars, in the 700 block of Tuckerman Street, N.W., approximately nine to ten blocks from the intersection of Fifth and Longfellow Streets, N.W. where the wrecked vehicle was located. While at the Tuckerman Street scene, Officer Beeler received the "disabled vehicle" call at Fifth and Longfellow Streets. As he traveled from the Tuckerman Street scene to the Fifth and Longfellow Streets scene, he observed a quarter-inch-deep, "continuous" mark in the road between the two scenes; Officer Beeler testified that he believed the mark was caused by a car "riding on [its] rim." He also saw a dislodged car tire at the corner of Tuckerman and Seventh Streets. When he arrived at the Fifth and Longfellow

Street scene, Officer Beeler saw Ambrocio's disabled vehicle, which had suffered extensive damage to its front bumper and whose front right wheel was missing. Officer Beeler testified that the rim of the dislodged tire matched the rims of the remaining tires on Ambrocio's vehicle.

The second Officer, Alex Cepeda, largely corroborated Officer Beeler's testimony. Officer Cepeda testified that he also answered Miller's "disabled vehicle" call while responding to the "hit and run" call on Tuckerman Street. Officer Cepeda interviewed witnesses at the Tuckerman Street scene and testified that Ambrocio's disabled vehicle at the Fifth and Longfellow Streets scene matched the descriptions of the offending vehicle given by those witnesses.[2]

When Miller called the police, Ambrocio left the scene. Miller, however, remained by the vehicle until the police arrived. Between ten and fifteen minutes later, while she was speaking to a responding police officer, Miller saw Ambrocio walking down the street and pointed him out to the officer. Miller could not remember the name of the officer to whom she spoke, but she testified that she spoke to him twice. The officer first interviewed Miller when he arrived at the

---

[2] A third officer, Officer Hall, responded to both the Tuckerman Street and Fifth and Longfellow Streets calls with Officer Beeler and Officer Cepeda. Officer Hall did not testify.

scene, during which interview, she testified, he took notes on a small notepad. The officer conducted a subsequent interview approximately thirty minutes later, by telephone after Miller had returned home, that lasted for approximately fifteen minutes.

Officer Beeler interviewed Ambrocio at the scene, with the help of Officer Cepeda, who served as a Spanish translator. During the interview, Ambrocio smelled of alcohol, had a sweaty face and watery eyes, attempted to urinate on the sidewalk, and did not or was unable to follow the officers' instructions. Ambrocio told the officers that his friend had been driving the vehicle,[3] but Officer Cepeda testified that Ambrocio was otherwise "uncooperative" and refused to give the friend's name or contact information, describe the friend, or tell the officers where the friend had gone.[4] Officer Beeler then conducted a standard field sobriety test

---

[3] Ambrocio testified at trial that his friend, Francis Canales, drove the vehicle, which belonged to Ambrocio's uncle, because Ambrocio had been drinking. Ambrocio denied ever being behind the wheel of the vehicle, but instead testified that after the accident he got out of the car to inspect the damage, removed the keys from the ignition, and eventually walked down the street to find help. Ambrocio also testified that Canales fled after the accident and subsequently could not be located to testify at trial because he was in the country illegally.

[4] Officer Cepeda testified that Ambrocio was so uncooperative that he did not include any information about his exchange with Ambrocio about Ambrocio's friend in his report of the interview.

(horizontal gaze nystagmus and "walk and turn" tests), concluded that Ambrocio was intoxicated, and arrested him.

During Miller's testimony about her interview with one of the responding officers, defense counsel alerted Judge Ringell to a *Jencks* issue, with regard to possible notes the officer may have taken during Miller's second interview. Judge Ringell deferred the issue until a later time. After the District rested its case, Ambrocio moved for a judgment of acquittal, arguing that Miller's testimony should be stricken because the defense had possibly not received all of the notes made by the responding officers, specifically those memorializing Miller's second interview. The District responded that it had turned over all of the notes in its possession in a "notes package," including Officer Beeler's notes, Officer Cepeda's accident reports, and a redacted version of Officer Hall's notes. The trial court denied Ambrocio's motion, concluding that the District had turned over all of the notes in its possession, that Miller did not know which officer had interviewed her, and that the existence of any notes from her second interview (conducted over the phone) was speculative. Ambrocio renewed his motion at the end of trial, which the trial court also denied.

Judge Ringell found Ambrocio guilty of both DUI and LAC. Judge J. Ramsey Johnson affirmed Judge Ringell's verdict, concluding that there was adequate evidence to support the ruling and that Ambrocio's *Jencks* argument was without merit. Ambrocio subsequently filed a timely notice of appeal.

## II.

### A.

Ambrocio argues that the trial court erred by failing to conduct a proper *Jencks* inquiry under Superior Court Rule of Criminal Procedure 26.2 with regard to the District's disclosure of the responding officers' notes. Ambrocio contends that he provided the requisite foundation to invoke Rule 26.2 by establishing that the officer who interviewed Miller at the scene took notes during the interview at the scene and interviewed Miller a second time over the phone, and that the District did not turn over notes from those interviews. According to Ambrocio, this foundation required the trial court to hold an evidentiary hearing to determine whether any notes existed. We agree.

On appeal, we will reverse the trial court's application of Rule 26.2 only if the trial court abused its discretion. *Lazo v. United States*, 54 A.3d 1221, 1231 (D.C. 2012).

Under Rule 26.2—the District's version of the federal *Jencks* Act, 18 U.S.C. § 3500 (b)—the trial court must, in response to a motion by a party who did not call a witness, order the party who called the witness "to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified." To implicate Rule 26.2, the moving party is required to establish a "reason to believe that a statutory statement may exist." *Johnson v. United States*, 800 A.2d 700 (D.C. 2002) (citation and internal quotation marks omitted). The burden then shifts to the nonmoving party, who must produce the statement so that the trial court may determine if the statement is discoverable under Rule 26.2. *Id.* If the nonmoving party is unable to produce the statement, the trial court is required to hold an evidentiary hearing to determine whether the statement exists. *Id.* at 701. The nonmoving party's lack of knowledge of the statement does not alone establish that the statement does not exist. *Id.*

We hold that the trial court erroneously exercised its discretion here by failing to hold the requisite evidentiary hearing after Ambrocio invoked Rule 26.2. Ambrocio established, both during Miller's direct examination and at the MJOA stage, a "reason to believe that a statutory statement may exist" by alerting the trial court to the possibility that a police officer took notes during the two interviews of Miller. Ambrocio argued that the same officer interviewed Miller both times, that that officer took notes during the first interview,[5] and that the second interview lasted for fifteen minutes. We are satisfied that this is sufficient to create a reason to believe that the officer took notes during the second interview.

Once Ambrocio invoked Rule 26.2, the burden shifted to the District to either produce the notes or prove that they did not exist. *Johnson*, *supra*, 800 A.2d at 700–01. The prosecutor here responded by claiming that she had turned over all of the notes in her possession in a "notes package" during discovery, did not believe that notes memorializing Miller's second interview existed, and that any argument that the notes did exist was speculation. The trial court agreed, concluding that the District had "lived up to the spirit of *Jencks* and that [defense] counsel's argument is speculative in that we don't even know who the officer was.

---

[5] The record is not clear whether the material supplied by the prosecution included notes of the face-to-face interview with Miller.

[Defense counsel] had ample opportunity with [his] thorough cross of Ms. Miller to ask her any and all questions."

However, the District's lack of knowledge of the notes or its belief that the notes do not exist is not sufficient to prove that they do not exist. *See Johnson*, *supra*, 800 A.2d at 701 ("The prosecutor's lack of awareness of any notes did not establish that they did not exist or could not be found"). Rather, once Ambrocio invoked Rule 26.2 by establishing a reason to believe that a statutory "statement" exists—which we conclude he did here—the trial court was required to hold an evidentiary hearing "to determine whether the notes ever existed in the first place." *Id.* The trial court failed to do this here and instead relied on the prosecutor's representation that she had turned over all existing notes and her belief that no additional notes exist. This was insufficient; without a hearing, the trial court could not be certain that the "notes package" turned over during discovery was complete. Consequently, we remand the case so that the trial court may conduct the necessary evidentiary hearing to determine whether the notes exist and, if they do exist, whether they are a "statement" for Rule 26.2 purposes. *See id.*[6]

---

[6] We note that if the notes do exist and the trial court concludes that they are a statutory "statement" (or the District concedes this point), Ambrocio is entitled to a new trial, unless the trial court "finds that the notes could not have been used to discredit" Miller. *Johnson*, *supra*, 800 A.2d at 701.

**B.**

Ambrocio also argues that the evidence was insufficient to support his convictions of DUI and LAC. Ambrocio argues that the evidence was insufficient because the District failed to prove that he "operated" or was "in physical control" of the vehicle. Ambrocio contends that neither Miller, nor her passenger, nor the responding officers saw him driving or otherwise behind the wheel of the vehicle, and that therefore there was insufficient evidence that he ever operated or controlled it.

On appeal, we review the evidence supporting a conviction in the light most favorable to the District and according to the principle that it is the trier of fact's prerogative to assess the credibility of and draw reasonable inferences from the evidence. *Long v. United States*, 940 A.2d 87, 99 (D.C. 2007); *see also* D.C. Code § 17-305. We will not reverse a conviction unless "the trial court's factual findings were 'plainly wrong' or 'without evidence to support [them].'" *Long*, *supra*, 940 A.2d at 99 (alteration in original) (quoting D.C. Code § 17-305 (a) (2001)). Reversal for insufficiency is warranted only if there was "no evidence upon which a reasonable mind could find guilt beyond a reasonable doubt." *Olafisoye v.*

*United States*, 857 A.2d 1078, 1086 (D.C. 2004) (citation and internal quotation marks omitted).

Both DUI and LAC require the government to establish that the defendant operated or controlled the vehicle.[7]  Here, the trial court received, and considered, sufficient evidence that Ambrocio operated the vehicle.  First, the trial court credited Miller's version of events over Ambrocio's testimony; the trial court pointed specifically to Ambrocio's intoxication, his testimony that he gave the keys to his uncle's vehicle to an individual his uncle did not know, and the fact that he would not cooperate with the responding officers, as proof that his version of events was not credible.  Second, the trial court pointed to the "totality of the circumstances" generated by Miller's testimony that proved that Ambrocio operated the vehicle:  (1) Miller saw Ambrocio in the driver's seat, (2) Ambrocio was in and out of the vehicle, (3) Ambrocio had possession of the vehicle's keys at one point, (4) Ambrocio fled the scene when Miller called the police, and (5) Ambrocio did not cooperate with the responding officers.  This Court has affirmed guilty verdicts in DUI and LAC prosecutions based on a similar combination of

---

[7]  Under D.C. Code § 50-2206.11, "[n]o person shall operate or be in physical control of any vehicle" while under the influence of alcohol or drugs. Similarly, under D.C. Code § 50-2201.05, "[a]ny person operating a vehicle" who causes injury or property damage must report the incident or face a fine or jail time.

facts. For example, in *Berger v. United States*, 597 A.2d 407 (D.C. 1991), the evidence showed the appellant was (1) alone in the car, (2) that he was in the driver's seat, (3) and that at some point, he possessed the vehicle's keys. *Id*. at 409. When combined with the responding officer's testimony about the appellant's apparent intoxication, these facts were sufficient to affirm the trial court's finding that the appellant was in physical control of the vehicle during the commission of the charged offense. Similarly, we also conclude that the evidence here was sufficient to prove that Ambrocio was in physical control of the vehicle, and therefore sufficient to convict him of DUI and LAC.

## III.

Because the trial court failed to conduct the requisite evidentiary hearing after Ambrocio invoked Rule 26.2, we remand the case so that the trial court may conduct a hearing to determine whether the police notes in question exist and, if they do exist, whether they are "statements" under Rule 26.2.

*So ordered*.