Talmadge H.R. BAYER, Appellant,

v.

UNITED STATES, Appellee.

Robert R. BIANCHI, Appellant,

v.

UNITED STATES, Appellee.

Nos. 93–CF–501, 93–CF–532.

District of Columbia Court of Appeals.

Argued Nov. 16, 1994.
Decided Dec. 22, 1994.

Gary M. Sidell, for appellant Bayer.

Cheryl D. Stein, for appellant Bianchi.

Glenn L. Kirşchner, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher and Micheal F. Tubach, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN and SCHWELB, Associate Judges, and BELSON, Senior Judge.

FERREN, Associate Judge:

Appellants, Bayer and Bianchi, appeal from their convictions for simple assault. D.C.Code § 22–504 (1989 Repl.). They contend (1) that the trial court's aiding and abetting instruction to the jury had no evidentiary basis and (2), that the trial court violated the Jencks Act, 18 U.S.C. § 3500 (1988), by refusing to order production of a police officer's notes of a witness interview. *See Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). We find no error in the aiding and abetting instruction, but, because the trial court erred in refusing to inspect and assess potential Jencks material, we must remand for an appropriate Jencks inquiry.

## I.

The government's evidence shows that on the night of July 4, 1991, Steve Simpson was leaving a nightclub with his girlfriend, Tonya Owen, and two other female friends when he was confronted by a group of approximately seven to twelve persons led by appellants. Appellant Bianchi told Simpson that Simpson needed to get his "ass kicked;" appellant Bayer told Simpson that the group was going to "jump" him. Then Simpson was pushed from behind, and he fell on Bianchi, who pushed him back, causing Simpson to hit his head on a light post. At this point, several persons from the group started kicking Simpson in the head. He was kicked at least ten times and temporarily lost consciousness after the second kick. Although Simpson was unable to determine the identity of the persons who had kicked him, Tonya Owen identified appellants as two of the kickers. After arriving at the scene, the police arrested appellants on the basis of Owen's identification.

At trial, Owen testified that a police officer had interviewed her about the assault on Simpson and had taken notes of the interview. Counsel for Bianchi moved for production of these notes as potential Jencks material. *See* 18 U.S.C. § 3500(e). The prosecution argued that these notes were not Jencks material unless "Owen adopted [them] as verbatim." The court denied the motion, saying that the government did not have these notes. Bianchi's counsel then moved to strike Owen's testimony because of the government's failure to provide Jencks material. This motion, too, was denied.

During trial, the government presented its case on the theory that appellants personally committed the assault on Simpson. At the close of the evidence, the judge discussed jury instructions with counsel. The prosecution proposed an instruction on aiding and abetting, to which the defense objected. Thereafter, the prosecutor presented to the jury a theory of aiding and abetting, for the first time, during rebuttal closing argument. Subsequently, the judge instructed the jury on aiding and abetting in accordance with CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA No. 4.02 (3d ed. 1978).

During deliberations, at the jury's request, the judge reinstructed the jury on aiding and abetting. The jury found both appellants guilty of simple assault.

## II.

In reviewing challenges to sufficiency of the evidence, we view the facts in the light most favorable to the government. *See Gayden v. United States,* 584 A.2d 578, 579 (D.C.1990), *cert. denied,* 502 U.S. 843, 112 S.Ct. 137, 116 L.Ed.2d 104 (1991). An aiding and abetting conviction will stand when facts show that the appellants "in some [way] associate[d themselves] with the venture, that [they] participate[d] in it as in something that [they] wish[ed] to bring about, that [they sought] by [their] action[s] to make it succeed." *Bailey v. United States,* 135 U.S.App.D.C. 95, 98, 416 F.2d 1110, 1113 (1969); *see Hackney v. United States,* 389 A.2d 1336, 1342 (D.C.1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 95 (1979). While "there must be evidence that someone other than defendant was the principal whom the defendant aided and abetted," *Brooks v. United States,* 599 A.2d 1094, 1099 (D.C.1991) (citation and internal quotation marks omitted), it is not necessary for conviction of aiding and abetting that the principal's identity be established. *See id.; Gayden,* 584 A.2d at 582. Accordingly, when the government proceeds against a defendant as a principal but then, at the close of the evidence, successfully requests an aiding and abetting instruction, no reversal is warranted if "there is clear and convincing evidence that the defendant was present and participating in the crime." *Head v. United States,* 451 A.2d 615, 626 (D.C.1982).

Appellants challenge the trial judge's aiding and abetting instruction on the ground that no evidence supported that theory. According to appellants, the evidence presented at trial could reasonably be construed to support only two possibilities: either appellants assaulted Simpson themselves, or they had nothing to do with the assault, being merely present at the scene. *See Brooks,* 599 A.2d at 1100; *United States v. Salamanca,* 300 U.S.App.D.C. 384, 990 F.2d 629, *cert.*

*denied,* —— U.S. ——, 114 S.Ct. 337, 126 L.Ed.2d 281 (1993); *United States v. Gray Bear,* 828 F.2d 1286 (8th Cir.1987); *Bailey,* 135 U.S.App.D.C. at 98, 416 F.2d at 1113. Appellants also contend that the identity of the persons they were alleged to have aided and abetted was not established at trial.

Appellants rely heavily on *Brooks,* but that reliance is misplaced. In *Brooks,* where the defendant was tried for burglarizing a restaurant, there was no evidence of another person (a principal) whom Brooks could have been assisting in the restaurant burglary. There was only some evidence that a woman, found near some tools at the back of the restaurant, might have been helping Brooks. We concluded that the aiding and abetting instructions were reversible error because, in order to find Brooks guilty of aiding and abetting, "the jury would have [had] to engage in an irrational or bizarre construction of the facts of the case." *Brooks,* 599 A.2d at 1099 (citing *Anderson v. United States,* 490 A.2d 1127, 1130 (D.C.1985) (per curiam)).

In contrast to *Brooks,* the facts of this case were sufficient to support an aiding and abetting instruction because they showed that appellants were part of a group that confronted and injured Simpson. Simpson testified that appellants had told him he was going to "have his ass kicked" and was going to be "jump[ed]." Simpson could not identify appellants as the persons who kicked him, but his girlfriend, Owen, testified that appellants had kicked Simpson in the head. The jury, therefore, reasonably could have believed that appellants had led the group and threatened Simpson but, disbelieving Owen, could have found that appellants had not kicked Simpson, thereby finding that appellants had been aiders and abettors of the "kickers." On the other hand, the jury reasonably could have credited Owen's testimony—the only evidence directly linking appellants to the kicking itself—and thus reasonably have found appellants guilty as principals in the assault. *See Head,* 451 A.2d at 626 (pointing out that where there is "convincing" evidence of defendant's participation, jury instructions on aiding and abetting are not inconsistent with government's proceeding against defendant as a principal

because "greater participation in the offense includes the lesser and the legal effect is the same"). Consequently, the trial court's aiding and abetting instructions were not erroneous.

## III.

■ Appellants also contend that the trial court erred in refusing to order production of the police officer's notes of his interview with Owen.[1] The government concedes, on appeal, that these notes may have been producible under the Jencks Act because they may have included "substantially verbatim recordings of oral recitals by the witness." 18 U.S.C. § 3500(e)(2).

■ The Jencks Act is a "narrowly structured scheme designed to regularize and limit the access of the accused to ... extrinsic statements or reports[] which may facilitate the impeachment of government witnesses." *Middleton v. United States*, 401 A.2d 109, 116 (D.C.1979). The Act entitles defendants to statements of a testifying witness, possessed by the government, that relate to the subject matter on which the witness testified. *See* 18 U.S.C. § 3500. Once a defendant requests production of reports or statements under the Jencks Act, therefore, the trial judge "has an affirmative duty, either by interrogation or by *in camera* inspection, to ascertain whether the statement is one defined by the Act itself as producible material and whether it is in the possession of the government." *Colbert v. United States*, 471 A.2d 258, 262 (D.C.1984).

■ In this case, defense counsel moved for production of the police officer's notes once the apparent existence of these notes had been established by Owen's testimony. At this point, the trial court should have investigated whether the police officer's notes qualified as a "statement" under 18 U.S.C. § 3500(e).[2] The court erred in failing to do so.

■ Despite conceding that the trial court erred, however, the government urges that the error was harmless. In deciding whether the government is correct, without our having access to the officer's notes of Owen's testimony, we must assume the worst: that these notes constituted or included a witness's "statement" under 18 U.S.C. § 3500(e), that the statement would have provided serious impeachment material, and that the failure to produce the statement, therefore, would have resulted in striking Owen's direct testimony under 18 U.S.C. § 3500(d). *See Middleton*, 401 A.2d at 123. Thus, the relevant question is whether the trial court's failure to strike Owen's testimony (assuming the government's refusal to produce a Jencks statement) resulted in "reversible prejudice" to appellants. *Id.; see Clark v. United States*, 593 A.2d 186, 192–193 (D.C.1991) (elaborating harmless error analysis under *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

Owen's testimony was the only part of the government's case tending to prove that appellants actually kicked Simpson and were therefore accountable as principals. Without

1. The government asserts that we should apply our Jencks Act analysis only for the benefit of appellant Bianchi because appellant Bayer has not raised this issue before the trial court or on appeal. In *Williams v. United States*, 382 A.2d 1, 7 n. 12 (D.C.1978), we concluded that when one co-defendant makes an objection at trial which the other co-defendant does not join, the latter can nonetheless benefit from the objection, on appeal, when it applies equally to his or her own situation. We said, more specifically, that the "plain error" standard of review that ordinarily applies to an issue raised for the first time on appeal is not meant to be punitive; "[r]ather, its functions are to permit trial courts fully to consider issues and thereby avoid potential error, and to afford prosecutors the opportunity to present evidence on the issue raised." *Id.; see Gibson and Sykes v. United States*, 649 A.2d 593

(D.C.1994). Under *Williams'* reasoning, therefore, we grant appellant Bayer the benefit of the Jencks issue raised at trial by co-defendant Bianchi since Bayer joined in the issue at oral argument on appeal.

2. A "statement" producible under the Jencks Act is defined by 18 U.S.C. § 3500(e) as one of the following: (1) a written statement made by the witness and signed or otherwise adopted or approved by him [or her], 18 U.S.C. § 3500(e)(1); (2) a recording which is a substantially verbatim recital of an oral statement made by the witness and recorded contemporaneously with the making of such oral statement, 18 U.S.C. § 3500(e)(2); or (3) a statement made by the witness to the grand jury, 18 U.S.C. § 3500(e)(3).

Owen's testimony, the government's case stood only on a theory of aiding and abetting, *i.e.*, on Simpson's testimony that appellants had led the group of persons who had assaulted him and that appellants had threatened him before the assault. Because we cannot assume the jury found appellants guilty as aiders and abettors, rather than as principals, we cannot conclude that the jury would have reached the same verdict without the testimony of the only witness (Owen) who identified appellants as the individuals who actually kicked Simpson. Accordingly, we cannot say the Jencks error concerning Owen's testimony was harmless; we must remand the case for the trial court to determine whether the police officer's notes qualified as a "statement" under 18 U.S.C. § 3500(e)(2), *supra* note 2.[3]

■ If, on remand, the trial court finds that these notes comprise a "substantially verbatim" account of the police officer's interview with Owen, then the notes constitute a statement which the government should have produced on defense counsel's motion. In that case, the trial court should next consider harmless error. If the trial court finds that the error in failing to produce the statement was not harmless,[4] it must vacate the judgments of conviction and order a new trial. *See United States v. North Am. Reporting, Inc.*, 238 U.S.App.D.C. 300, 306–307, 740 F.2d 50, 56–57 (1984).

If, on the other hand, the trial court finds either that the police officer's notes do not constitute a Jencks Act statement or that the notes constitute a Jencks Act statement but that their non-production was harmless error, then the trial court must "supplement the record with new findings and enter a new final judgment of conviction" for each appel-

lant. *Williams v. United States*, 117 U.S.App.D.C. 206, 209, 328 F.2d 178, 181 (1963) (quoting *Campbell v. United States*, 365 U.S. 85, 99, 81 S.Ct. 421, 428, 5 L.Ed.2d 428 (1961)). (Such entry of a new final judgment "will preserve to [appellants] the right to seek further appellate review on the augmented record." *Id.*)

Accordingly, we remand for further proceedings under the Jencks Act consistent with this opinion.

*So ordered.*

---

3. Appellants do not contend that the police officer's notes of the Owen interview constituted "statements" under 18 U.S.C. §§ 3500(e)(1) or (3), *supra* note 2.

4. The trial court's review for harmless error on remand is different from our appellate review for harmless error at this time. While we had to decide whether the government's case could stand in the absence of Owen's testimony, hypothetically stricken pursuant to 18 U.S.C. § 3500(d), the trial court must view the statement itself to see whether it could have been

used to impeach Owen at trial. The trial court can find non-production of the statement harmless, however, only if it finds that the statement could not have been used to discredit Owen. Harmless error review is to be strictly applied in Jencks Act cases; the trial court "cannot speculate whether [Jencks material] could have been utilized effectively at trial." *United States v. North Am. Reporting, Inc.*, 238 U.S.App.D.C. at 306 n. 8, 740 F.2d at 56 n. 8 (quoting *Clancy v. United States*, 365 U.S. 312, 316, 81 S.Ct. 645, 648, 5 L.Ed.2d 574 (1961)).