Matthew Ryan DUNN, Appellant,

v.

UNITED STATES, Appellee.

No. 08–CM–920.

District of Columbia Court of Appeals.

Submitted July 7, 2009.

Decided July 23, 2009.

---

30. *Miller, supra,* 948 A.2d at 575; *Concerned Citizens of Brentwood,* 634 A.2d at 1242.

Sean R. Day, College Park, MD, was on the brief for appellant.

Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese III and Bernard J. Delia, Assistant United States Attorneys, were on the brief for appellee.

Before FISHER and OBERLY, Associate Judges, and NEWMAN, Senior Judge.

OBERLY, Associate Judge:

Matthew Dunn was convicted of assault in violation of D.C.Code § 22–404 (2001) for shoving a private security officer at an animal rights protest. Dunn appeals, arguing that (1) there was insufficient evidence that he intentionally shoved the officer; (2) the trial judge erroneously convicted Dunn based on the judge's view that a political protester has the propensity to commit assault; and (3) his assault, if any, was de minimis. We affirm.

## I. Facts and Procedural History

This is what happened. On February 22, 2008, Matthew Dunn, Adam Ortberg, and Franklin Wade went to 701 Pennsylvania Avenue, N.W., the Navy Memorial Building, to protest against animal cruelty. Wade explained that they were at that address to protest against the pharmaceutical company Novartis; according to Wade, Novartis is "one of the biggest contractors with Huntington Life Sciences, which kills 500 animals every day, including punching beagle puppies in the face in undercover video." Wade testified that his experience as a veteran of more than 100 protests gave him cause to fear "police repression," and so Wade and his co-protesters covered their faces to conceal their identities. Dunn wore a blue bandana which was pulled over his face up to his eyes; a piercing in the shape of upside down bull horns was visible hanging from Dunn's nose.

Mattison Agneu, the security director for 701 Pennsylvania Avenue, had notice that animal rights protesters were coming. Agneu testified that in preparation for the protest, his security team "locked the building down," and Agneu, along with three other security officers, was standing at the door of 701 Pennsylvania Avenue to prevent the protesters from coming into the building. Agneu testified that, following "normal routine," his command center called the Metropolitan Police Department twice to alert the MPD of the protest "just in case" things got out of control. And indeed, although Agneu did not realize it at the time, MPD Detective Norma Horn was across the street, observing the scene for approximately twenty minutes.

Dunn and his confederates arrived at 701 Pennsylvania Avenue at around 1 p.m. They handed out leaflets, chanted, and held signs of a puppy in blood. One of Dunn's friends, Ortberg, yelled through a bullhorn (here, meaning an amplifying device, not a nose piercing) directly into the face and ear of Damien Bonner, a security guard on Agneu's team. Bonner, understandably, moved the bullhorn away from his face. The parties dispute how much force Bonner used—Bonner said he "shoved" the bullhorn, Wade said that Bonner "punched" the bullhorn, and Agneu testified that Bonner "mov[ed]" it— but the precise details are not relevant to this appeal.

What is relevant is what happened next. Having seen Bonner move the bullhorn away from his face, Agneu feared a confrontation. So Agneu came over, "grabbed [Bonner] by his arm, and ... went to pull him back." "But," Agneu testified, "as I pulled [Bonner] back," Dunn "approached," and, chanting " 'all your fault,' "

Dunn "kind of-he shoved me." Asked to elaborate, Agneu explained that Dunn was holding a sign "out in front of him, and in one motion, he just thrust forward and, and pushed me back." Dunn's hands, in Agneu's estimation, moved only five to six inches. Nonetheless, Agneu testified, the force of the push was sufficient to move Agneu, a 6'4", 215–pound man, backward. Detective Horn, who had been observing the scene from across the street, largely confirmed Agneu's account. Wade, however, testified that Dunn never got closer than eight feet to Agneu.

Agneu testified that after Dunn pushed him, Agneu asked, "what in the hell are you—do you think you're doing?" In response, according to Agneu, Dunn continued to chant, " 'all your fault, all your fault, all your fault.' " Bonner—the security officer whom Agneu pulled back from Ortberg, the protester who was yelling into Bonner's face—did not see Dunn push Agneu. Bonner testified, however, that after Agneu pulled him away from Ortberg, Agneu was "moving backwards" and "telling a guy, 'what are you thinking.' " Agneu then heard "the guy" say, " 'well, get your little thug and gangster out of my way then.' " Bonner understood the "thug" moniker to refer to himself.

Wade testified that thereafter Dunn and friends stayed to chant for "several . . . about five more minutes," and then left for the next of three scheduled protest locations for the day. Detective Horn, who had been observing from across the street (it seems in plain clothes), came over, identified herself as a police officer, and informed Agneu that "what had happened out there was an assault." Agneu responded that he had to talk things over with a "higher up," and eventually, a different officer came by and took the assault report. By that time, however, Dunn was gone.

The protesters returned with signs and bullhorns on March 21, 2008, as did Detective Horn, this time in uniform. Horn asked Agneu whether he recognized any of the protesters. Agneu pointed at Dunn who (again wearing a bandana or a scarf) was protesting, beating a white paint bucket with a stick. Agneu told Horn that Dunn was the "guy" who had assaulted him, and predicted that if Horn pulled down the bandana/scarf covering Dunn's face, Dunn's nose piercing would be visible.

Horn then approached Dunn and asked him to uncover his face. Dunn refused, so Horn pulled down the bandana/scarf herself, revealing the nose piercing that Agneu had mentioned. Horn recognized Dunn as the person who pushed Agneu a month earlier, and so Dunn was arrested and taken to the proverbial "downtown" for processing.

The government charged Dunn with assault in violation of D.C.Code § 22–404. After a bench trial, Dunn was convicted and sentenced to seven days' imprisonment, execution of sentence suspended, six months unsupervised probation, and fines totaling $100.

## II.   Discussion

### A.   There was sufficient evidence that Dunn assaulted Agneu.

The statute under which Dunn was prosecuted provides: "Whoever unlawfully assaults, or threatens another in a menacing manner, shall be fined not more than $1000 or be imprisoned not more than 180 days, or both." D.C.Code § 22–404(a) (2001). This court has held that there are "three essential elements of the crime of assault: First, there must be an act on the part of the defendant; mere words do not constitute an assault. . . . Secondly, at the time the defendant commits the act, the defendant must have the apparent present

ability to injure the victim. Finally, at the time the act is committed, the defendant must have the intent to perform the acts which constitute the assault." *Ray v. United States*, 575 A.2d 1196, 1198 (D.C. 1990) (internal quotation marks and citations omitted).

■ Crucially for this case, "[i]t is firmly established in our case law that the injury resulting from or threatened by an assault may be extremely slight. There need be no physical pain, no bruises, no breaking of the skin, no loss of blood, no medical treatment." *Ray*, 575 A.2d at 1198. That is because "simple assault, as presented here ... is designed to protect not only against physical *injury*, but against all forms of offensive touching, and even the mere threat of such touching." *Comber v. United States*, 584 A.2d 26, 50 (D.C.1990) (en banc) (internal citations omitted). Thus, "an assault conviction will be upheld when the assaultive act is merely offensive, even though it causes or threatens no physical harm to the victim." *Ray*, 575 A.2d at 1199 (affirming assault conviction of defendant who spat in the face of officer who arrested her); *see also Mahaise v. United States*, 722 A.2d 29, 30 (D.C.1998) (holding that removal of a phone from complainant's left hand and removal of a cigarette from complainant's right hand was sufficient to set out prima facie evidence of two separate assaultive acts).

Dunn's first argument is that "[i]t was clearly erroneous for the trial court to have found Mr. Dunn guilty of the charge." Because Dunn does not cite any factual findings that allegedly were clearly erroneous, we, like the government, understand Dunn to be making a sufficiency of the evidence challenge. And, finding sufficient evidence to sustain the conviction, we reject Dunn's "clearly erroneous" argument.

■ Although Dunn concedes that both Agneu and Detective Horn testified to having seen him push Agneu, Dunn claims that there was no proof beyond a reasonable doubt that Dunn came into contact with Agneu. In support of this argument, Dunn points out that Bonner, the officer whom Agneu pulled back from the confrontation with Ortberg, answered "no" when asked whether he saw "any physical altercations between any of the protesters and Mr. Agneu." Further, Dunn argues, Wade testified that Dunn got "no closer than eight feet" to Agneu. But Bonner saw Agneu "moving backwards" at the time that Agneu said that he was pushed. And, commenting on Wade's testimony, the trial court said: "I don't think Mr. Wade was necessarily untruthful, but I don't think he had the same immediate opportunity to observe what was happening, at least between the defendant and Agneu. So I credit what Agneu says about the encounter between himself and the defendant." The judge's assessment of this he-said, he-said evidence was reasonable, and so we hold that there was sufficient evidence to find that Dunn came into contact with Agneu. *See Hart v. United States*, 863 A.2d 866, 873 (D.C. 2004) ("Contradictions among witnesses at trial are inevitable and are matters for the jury to resolve as they weigh all the evidence, and where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.") (internal quotation marks, citations, and alterations omitted).

Dunn's speculation that he might have been acting unintentionally is just that—speculation that the trial court was not required to accept. It is, of course, possible that, as Dunn argues in his brief, Dunn aimed "to zealously display the sign, not shove Mr. Agneu." But no evidence supports this possibility because Wade did not

say that Dunn acted unintentionally and Dunn did not testify to explain his version of events. We cannot infer Dunn's guilt from his failure to testify, but neither are we required to give more credit to the speculation in his brief than to testimony from people who were at the scene and whose testimony is sufficient to show that Dunn acted intentionally.

In a sufficiency challenge we view the evidence in the light most favorable to the government, draw all reasonable inferences in the government's favor, and defer to the factfinder's credibility determinations. *Blakeney v. United States*, 653 A.2d 365, 369 n. 3 (D.C.1995). Applying this standard of review, we hold that there was sufficient evidence from which a reasonable mind might fairly infer that (1) Dunn made contact with Agneu, which contact was offensive to Agneu; (2) no less than the person convicted of assault for spitting in *Ray*, Dunn had the ability to injure (*i.e.*, to offend) Agneu; and (3) Dunn acted intentionally. This is enough to convict for assault. *See Ray*, 575 A.2d 1196.

**B. The trial court did not convict Dunn based on a belief that political advocates have a propensity towards violence.**

Dunn's second argument is that the trial court "based its finding of guilt beyond a reasonable doubt on the belief that a person who zealously engages in speech, or is even alongside a person who zealously engages in speech, is likely to commit an act of violence in furtherance of their [sic] cause." The short answer to this claim is that the trial court did no such thing.

Dunn's claim that the trial judge believed that protesters have a propensity to violate the law stems from a question that the trial judge asked of Dunn's counsel during closing argument. Specifically, when Dunn's counsel claimed that Agneu's testimony was not credible, the trial judge asked: "If your client has associated himself with a small group of aggressive demonstrators, why should I think the testimony that indicates that he was aggressive is less believable? It's probably more believable if it appears that these few men were very insistent on pressing (indiscernible)." In the end, however, the judge did not find that Dunn was more aggressive because he associated himself with Wade; the judge was only probing Dunn's argument. And, significantly, the judge also asked critical questions of the prosecutor. For example, when the prosecutor argued that Dunn had a motive to shove Agneu because Wade had testified about animal abuse, the judge pressed: "But he might have a strong feeling about animal rights, you know, or experimenting on animals. But why would he want to shove Agneu with a sign?" And when the prosecutor claimed that animal rights protesters have "an extreme viewpoint," the trial judge countered: "[B]ut in this particular instance, is there anything you can say about why the defendant would have pushed Mr. Agneu with a sign?" Thus, the argument that the trial court had it out for animal rights activists or that the judge thought that Dunn, as a protester, had a propensity to be violent is belied by the record.

**C. Dunn's *"de minimis"* argument fails.**

Finally, Dunn asks us to overturn his conviction because his violation of the law, if any, was *de minimis*. We decline to do so.

Dunn's argument (and, to some extent, the government's response) conflates two distinct ideas: one, that some trivial violations of the assault statute may be, as Dunn argues, "too slight to constitute a criminal assault," and two, that there should be a *de minimis* defense to assault.

The arguments are related, but different. The difference is between arguing that driving at 56 mph in a 55 mph zone is not speeding and arguing that driving at 56 mph in a 55 mph zone is speeding, but does not warrant a fine because, as one might say, "c'mon, judge, it's only one mile over."

The first aspect of the argument is really Dunn's sufficiency argument by another name, and it fails for the same reasons. As mentioned above, it is settled in this jurisdiction that "an assault conviction will be upheld when the assaultive act is merely offensive, even though it causes or threatens no physical harm to the victim." *Ray*, 575 A.2d at 1199. Put differently, just as breaking the speed limit by only one mile per hour is speeding, an assault is an assault, even if it causes no physical injury. Therefore, under our established law, Dunn's shove was an assault even if it did not cause Agneu any physical harm.

Dunn's arguments for why his shove nonetheless does not amount to assault do not withstand scrutiny. As an initial matter, Dunn's claim that the circumstances gave the 6'4", 215–pound Agneu reason only to "feign[ ] offense" at Dunn's pushing him does not do justice to what transpired. Rather, we think that a reasonable mind might fairly conclude, *see Blakeney*, 653 A.2d at 369 n. 3, that Agneu, a security guard who was not employed by the company that allegedly kills beagle puppies, was offended when a masked stranger chanted at and then pushed him without provocation. That inference is supported by the fact that, when he was pushed, Agneu protested: "what in the hell are you—do you think you're doing?" It makes no difference that Dunn moved his hands only five to six inches in striking Agneu. The action was sufficient to move Agneu backward, and there is no reason to doubt that, as a general matter, even a slight hand movement can offend someone.

Dunn also claims that Agneu was not offended by the shove because Agneu did not reach out to police. But Agneu said that he felt no need to call the police because "during these protests, we, we always have plain clothes officers that are somewhere around the area," and, indeed, Detective Horn witnessed the confrontation from across the street. Likewise, Dunn's claims that the police "coached" Agneu to file a claim, and that the litigation was "driven" by the police, not Agneu, are no reasons to reverse. For one thing, there is no evidence in the record that the police "coached" Agneu to file a claim— Agneu expressly denied that anyone from the police pressured him to file a complaint with the police. For another thing, "the judges of [this] court endeavor *not* to decide appeals based on who the litigants are, who their lawyers are, or what we may believe their motives to be." *Severance v. Patterson*, 566 F.3d 490, 493 n. 2 (5th Cir.2009) (responding to dissent's allegation that litigation was driven by ideological interest group), *see id.* at 504–05 (Wiener, J., dissenting). Thus, it is irrelevant whether the police or Agneu instigated the litigation. The question for this court is whether the facts establish that Dunn committed an assault.

Dunn's argument that he should be able to plead a *de minimis* defense—in our earlier example, to be able to say that speeding by one mile per hour, albeit technically a violation, just does not deserve a penalty—also fails. We appreciate that there is no evidence that Dunn frightened Agneu or that Agneu had trouble getting over Dunn's encroachment on his personal space. Similar minor violations of the assault statute may well happen every day, yet it is exceedingly rare for the U.S. Attorney's Office to get involved. Why,

.

then, should Dunn not be able to argue that his shove was too minor to warrant a criminal penalty?

The answer is that Dunn fails to cite any authority for a *de minimis* defense in the District. Some jurisdictions have recognized *de minimis*-type defenses, but they have done so through legislation, not judicial decree. New York, for instance, has a statute that permits trial judges to dismiss certain criminal charges where "some compelling factor, consideration or circumstances clearly demonstrat[es] that conviction or prosecution of the defendant ... would constitute or result in injustice." N.Y.CRIM. PROC. LAW § 170.40(1) (1979). And a few other states have adopted provisions based on MODEL PENAL CODE § 2.12 (2001), which "authorizes courts to exercise a power inherent in other agencies of criminal justice to ignore merely technical violations of law." *Id.*, Explanatory Note; *see* Stanislaw Pomorski, *On Multiculturalism, Concepts of Crime, and the "De Minimis" Defense*, 1997 B.Y.U. L. REV. 51 & n.

2; *see, e.g.*, N.J. STAT. ANN. 2C:2–11 (2005); ME.REV.STAT. ANN. 17–A, § 12 (2006); 18 PA. CONS.STAT. § 312 (1998). The D.C. Council, however, has not joined ranks with the "very limited" number of states that have adopted the defense. Pomorski, 1997 B.Y.U. L. REV. 51. As a result, we lack the power to give Dunn the relief that he seeks. That the assault was slight is reflected in the minor sentence that Dunn received: seven days' imprisonment, execution of sentence suspended, six months unsupervised probation, and $100 in fines.

### III. Conclusion

For the foregoing reasons, Dunn's conviction is

*Affirmed.*