Jose MEDINA, Appellant,

v.

UNITED STATES, Appellee.

Nos. 08–CM–1559, 11–CO–650.

District of Columbia Court of Appeals.

Argued Dec. 17, 2012.
Decided Feb. 28, 2013.

**640**

Steven Gremminger, New York, with whom Steven M. Oster was on the brief, for appellant.

Ephraim (Fry) Wernick, with whom Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Assistant United States Attorney at the time the brief was filed, Elizabeth Trosman and Ann M. Carroll, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE–RIGSBY and EASTERLY, Associate Judges, and NEBEKER, Senior Judge.

BLACKBURNE–RIGSBY, Associate Judge:

After a bench trial, appellant Jose Medina was convicted of one count of assault.[1] In this consolidated appeal of his conviction and the trial court's order denying his motion for a new trial, appellant argues three grounds for reversal or remand of his conviction: (1) there was insufficient evidence to prove beyond a reasonable doubt that he assaulted the victim; (2) the trial court erred by denying his motion for a new trial without conducting a hearing; and (3) the government failed to disclose Jencks materials created by the prosecutor and several Metropolitan Police Department employees. We conclude that there was sufficient evidence to support appellant's conviction and that the trial court did not err by denying appellant's motion for a new trial without conducting a hearing. However, we remand this case to the trial court to conduct an evidentiary hearing on the discrete issue of whether the government complied with the Jencks Act with respect to notes taken by Sergeant Mercier during his meetings with the prosecutor and the government's key witness, Officer Gallagher.

**I.**

In the early morning of October 14, 2006, Metropolitan Police Department (MPD) Officers Edward Shymansky and Delmar Gallagher arrested Buony Roum and brought him to the Third District Police Station for processing. At the station, appellant, an MPD detective, briefly interviewed Roum. After the interview, Officers Shymansky and Gallagher put Roum in handcuffs and brought him into the hallway, where they left him standing while they collected his personal property.

At this point, appellant walked by Roum and became involved in a verbal exchange with him, during which Roum referred to appellant with a racial slur.[2] Officer Gallagher, who observed the encounter while

---

1. In violation of D.C.Code § 22–404 (2001).

2. No witness testified about specifically what slur Roum used.

standing several feet away, testified that appellant became angry and spoke loudly, while he stood toe to toe with Roum, who remained in handcuffs. A videotape of the encounter, which included the sound recording but no corresponding visual depiction, established that in response to Roum, appellant stated repeatedly "What did you say to me?" as he became progressively louder. Roum eventually muttered, "I didn't say nothing." Officers Shymansky and Gallagher testified that they saw appellant strike Roum in the forehead with his forearm three or four times, which caused Roum to fall to the ground. Both officers testified that their attention was focused on appellant and Roum when appellant struck Roum and that their view was unobstructed.[3] At trial, appellant testified that, in accordance with MPD operating procedures, he used his forearm to subdue Roum because Roum attempted to headbutt him.[4] However, Officer Gallagher testified that he did not see Roum attempt to headbutt appellant before appellant struck Roum.[5] Officer Shymansky also testified that he did not see Roum make an aggressive movement before appellant struck him. After the incident, police officers brought Roum to the hospital. Officer Shymansky testified that later that night, when he asked appellant why he struck Roum, appellant responded something akin to "yeah, whatever, I'm sorry."

Following a bench trial, Judge Wynn orally issued her judgment, finding appellant guilty of one count of assault. She sentenced appellant to thirty days, with execution of sentence suspended, followed by a period of three years supervised probation to monitor the defendant's performance of five hundred hours of community service. Appellant filed a Motion to Overturn Conviction or for a New Trial, which the trial court denied without a hearing. Appellant filed timely appeals of the denial of the motion and of his conviction.

## II.

### A.

■ We first address appellant's contention that there was insufficient evidence to support his assault conviction. "In a sufficiency challenge we view the evidence in the light most favorable to the government, draw all reasonable inferences in the government's favor, and defer to the factfinder's credibility determinations." *Dunn v. United States,* 976 A.2d 217, 221 (D.C. 2009) (citation omitted); *see also Rivas v. United States,* 783 A.2d 125, 134 (D.C. 2001) (en banc) ("A court must deem the proof of guilt sufficient if, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (internal quotation marks and citations omitted)). Consequently, "[t]his standard of

3. During cross-examination, Officer Gallagher stated, "I would say I'm paying attention. I mean, I might have glanced here and there a couple of times, but for the most part, yes, I was paying attention ... I don't think I missed a move."

4. Appellant testified: "I stopped, I looked at him and I said 'what did you say to me' and he just looks at me. So I ask him again, 'what did you say to me.' At that point he does this movement as to headbutt me."

5. In particular, in response to the prosecutor's question, "[D]id Mr. Roum make any aggressive motion towards [appellant] before [appellant] hit him?," Officer Gallagher stated, "No, not that I remember." Officer Gallagher later confirmed that he was "very certain" that he did not see Mr. Roum do anything that could have explained appellant's actions.

review places a heavy burden on appellant." *Watson v. United States,* 979 A.2d 1254, 1256 (D.C.2009) (internal quotation marks and citation omitted).

■ To prove assault, the government must prove three elements beyond a reasonable doubt: (1) an act by the defendant; (2) "at the time the defendant commits the act, the defendant must have the apparent present ability to injure the victim"; and (3) "at the time the act is committed, the defendant must have the intent to perform the acts which constitute the assault." *Dunn, supra,* 976 A.2d at 219–20 (internal quotation marks and citation omitted). Here, only the third element is in dispute: whether the evidence established that appellant harbored the intent to assault Roum. The resolution of this issue is primarily contingent upon a credibility contest between appellant and Officer Gallagher, and the probative value of the videotape.[6] Appellant argues that the trial court erred by crediting Officer Gallagher's testimony over appellant's testimony because Officer Gallagher's testimony was unreliable and inconsistent. Appellant also argues that the video recording cannot establish the assault occurred because "mere words do not constitute an assault." *Dunn, supra,* 976 A.2d at 219 (internal quotation marks and citation omitted).

■ Whereas appellant testified that he struck Roum in response to an attempted headbutt, Officer Gallagher testified that he observed, from close proximity, appellant strike Roum several times without provocation. While Officer Gallagher acknowledged that he might have glanced away momentarily, he was "very certain" that Roum did not provoke the assault. This "[c]onflicting trial testimony is, of course, nothing new and it is the duty of the finder of fact to reconcile such inconsistencies." *Lazo v. United States,* 54 A.3d 1221, 1230 (D.C.2012). In turn, "[w]e have long held that the trial court is in the best position to observe and assess the demeanor of the witnesses." *Poole v. United States,* 929 A.2d 413, 415 (D.C. 2007) (internal quotation marks and citation omitted). We decline to "redetermine the credibility" of either witness because the trial judge "had the opportunity to observe their demeanor and form a conclusion." *Shepherd v. United States,* 905 A.2d 260, 262 (D.C.2006) (internal quotation marks and citation omitted) (accepting the trial judge's determination that the version of events described by the government's witnesses was more credible than that offered by the appellant); *see also Hart v. United States,* 863 A.2d 866, 873 (D.C.2004) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985))). Therefore, we accept the trial judge's determination that Officer Gallagher was more credible than appellant.

Appellant argues that the videotape cannot support appellant's conviction because "mere words do not constitute an assault." On the recording, appellant repeatedly and aggressively asks Roum: "what did you say to me?" In response, Roum mumbles, "I didn't say nothing." From this ex-

6. In delivering her judgment against appellant, the trial judge noted that "even if [Officer Shymansky's] testimony had been stricken, the absence of that testimony would not have made a difference in my verdict. Because ... there's question about what kind of attention he was paying at the beginning of the incident." Because the trial judge did not fully credit Shymansky's testimony, we do not consider his testimony in evaluating the sufficiency challenge.

change, it was not unreasonable for the trial judge to infer that appellant, who was perceptibly angry with Roum for uttering the racial slur, harbored the requisite intent to assault Roum. Moreover, appellant never states anything related to Roum's actions, such as "what did you do?," "stop resisting," or "calm down." Such comments could have suggested that Roum was physically aggressive. As we must "draw all reasonable inferences in the government's favor" on appeal, we accept the trial judge's finding that the audio recording of the altercation corroborates Officer Gallagher's testimony that Roum did not attempt to headbutt appellant. *Dunn, supra,* 976 A.2d at 221. Thus, there was sufficient evidence to establish that appellant assaulted Roum.

## B.

■ Next, we consider whether the trial court properly addressed appellant's requests for Jencks material.

The Jencks Act is a limited statutory scheme which serves the concurrent purposes of aiding the search for truth by facilitating the impeachment of a witness who has given a statement to the government, while at the same time regulating access by the defense to materials and evidence within the government's possession.

*Lazo, supra,* 54 A.3d at 1231 (internal quotation marks and citation omitted). Before the court will require the government to turn over Jencks material to a defendant, the following four prerequisites must be met: "(1) [t]he material must be in the possession of the government; (2) the defense must request the material; (3) the material must constitute a 'statement' as defined in the Jencks Act; and (4) the statement must relate to the subject matter of the witness' direct testimony." *Id.* (internal quotation marks, alterations, and

citations omitted). When a defendant requests production of statements pursuant to the Jencks Act, "the trial judge has an affirmative duty, either by interrogation or by *in camera* inspection, to ascertain whether the statement is one defined by the Act itself as producible material and whether it is in the possession of the government." *Bayer v. United States,* 651 A.2d 308, 311 (D.C.1994) (internal quotation marks and citation omitted). Therefore, the defendant's burden " 'is simply to establish by probative evidence usually on cross-examination of the witness alleged to have given a statement that there is reason to believe that a statutory "statement" *may* exist.' " *Lazo, supra,* 54 A.3d at 1232 (emphasis added) (quoting *Goldberg v. United States,* 425 U.S. 94, 124, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976) (Powell, J., concurring)). Although the defendant must show more than "speculative possibility," the defendant need not prove that the statement exists. *Id.* Instead, "counsel need elicit only that the witness was interviewed by an agent of the government, who made notes of the conversation." *Johnson v. United States,* 800 A.2d 696, 700 (D.C.2002) (internal quotation marks and citation omitted).

■ We entrust the administration of the Jencks Act to the trial court. *Lazo, supra,* 54 A.3d at 1231. Therefore, we have "afforded trial courts considerable deference in ruling on Jencks Act issues, which we review for abuse of discretion." *Id.* (internal quotation marks and citation omitted). However, even if we conclude that the trial court abused its discretion in ruling on a Jencks issue, the error is only grounds for reversal if we also hold that the error was not harmless. *Id.* at 1235 (citing *Lyles v. United States,* 879 A.2d 979, 982–83 (D.C.2005)). An error is harmless if we determine, " 'with fair assurance, after pondering all that happened

without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" *Lazo, supra,* 54 A.3d at 1235 (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

■■■■ Appellant alleges that the trial court abused its discretion by neither ordering the government to disclose Jencks materials nor conducting an evidentiary hearing to determine whether the materials existed pertaining to each of its principal witnesses, Officer Gallagher, Officer Shymansky, and Sergeant Mercier.[7] Accordingly, we consider whether Jencks violations occurred with respect to: (1) notes taken by Sergeant Mercier during his interviews with Officer Gallagher; (2) notes taken by the prosecutor during her interviews with Officer Gallagher; and (3) notes taken by Officer Shymansky or by government agents during interviews with Officer Shymansky.

### 1.

During his cross-examination of Officer Gallagher, defense counsel asked a series of questions about whom Officer Gallagher had discussed the Roum incident with and then requested Jencks materials pertaining to Officer Gallagher because he did not "think that [he had] everything in light of what [he] heard from Officer Gallagher." Although Officer Gallagher testified that he met with the prosecutor and Sergeant Mercier approximately ten times to discuss

the case, defense counsel informed the trial court that in response to his Jencks request, the government had only provided a copy of Officer Gallagher's grand jury testimony from March 2007 and Sergeant Mercier's notes from one meeting with Officer Gallagher that took place on March 15, 2007. Defense counsel emphasized, "I'm saying Sergeant Mercier would be at the meetings with Officer Gallagher and would take reports and . . . we should have Sergeant Mercier in a full evidentiary hearing about Jencks." At that point, the prosecutor insisted that she had already asked Sergeant Mercier for all of his notes and he had "prepared summaries after the fact, which of course, are not Jencks. . . ."

In response to this Jencks request, the trial judge stated that she did not think that Officer Gallagher had mentioned that Sergeant Mercier had taken notes during their meetings. The trial judge continued: "[The prosecutor] has said that she checked with [Sergeant] Mercier; that she asked him for all his notes and this is what she got. You can ask questions—direct questions about that to make your record." Defense counsel responded: "Okay. That's what I will do." In response to defense counsel's questioning, Officer Gallagher then testified that he remembered Sergeant Mercier "writing stuff down" during the meetings. Specifically:

> **Defense Counsel:** And during the course of these [meetings] we will call

---

7. Upon review of the record on appeal, we cannot discern, nor does appellant cite to in his brief or reply brief, any instance when defense counsel requested Jencks material containing statements made by Sergeant Mercier. The trial court need not require the government to disclose Jencks materials unless the defendant makes a request. *Lazo, supra,* 54 A.3d at 1231. Nevertheless, even assuming that the request was made and the trial judge erred by not inquiring whether such materials existed, the error was harm-

less because the trial court did not rely upon Sergeant Mercier's testimony in reaching its verdict and his testimony played no part in our evaluation of the sufficiency challenge. Sergeant Mercier was not a witness to the alleged assault and he only testified about the layout of the room where the incident occurred; he was not a "principal witness." Consequently, we find it unnecessary to consider any potential Jencks violations related to statements made by Sergeant Mercier.

them five cumulative hours approximately of meetings, Sergeant Mercier is taking notes?

**Gallagher:** Yes.

**Counsel:** Okay. And he's taking notes in real time? You're talking and he's writing things down?

**Gallagher:** Yes.

After this exchange, defense counsel stated: "I want to renew [the Jencks] issue and I will address it when this gentleman is done testifying." However, defense counsel did not specifically raise the Jencks issue again with respect to these notes.

▮▮▮ Nevertheless, we conclude that defense counsel's first request for a "full evidentiary hearing," coupled with the testimony elicited from Officer Gallagher, was sufficient to satisfy appellant's burden.[8] When Officer Gallagher testified that he observed Sergeant Mercier taking notes during their meetings, defense counsel established that "statutory statement[s] *may*

exist." *Lazo, supra,* 54 A.3d at 1232 (emphasis added). Doing so triggered the trial court's "affirmative duty" to ascertain "either by interrogation or by *in camera* inspection," whether Sergeant Mercier did create additional Jencks materials and the whereabouts of such materials. *Bayer, supra,* 651 A.2d at 311; *see also Flores v. United States,* 698 A.2d 474, 481 (D.C. 1997) ("We agree that in light of Lainez's testimony at trial that the police took notes of her statement, the trial court should have undertaken an independent Jencks inquiry into the existence and location of notes taken by the police of Lainez's statement."). From the record, it seems that the trial judge accepted the prosecutor's representation that she had requested all notes from Sergeant Mercier and turned them over to appellant. It is, however, immaterial that the prosecutor insisted that the government had already disclosed all of Sergeant Mercier's notes because we have repeatedly held that a trial court may not accept a prosecutor's

---

8. In its brief, the government argued that appellant abandoned his claim for Sergeant Mercier's alleged notes at trial and cites to *Brown v. United States,* 627 A.2d 499 (D.C. 1993). In *Brown,* although defense counsel specifically asked the trial court to not give the jury a specific instruction, the appellant argued on appeal that the trial court erred by failing to give that very instruction. *Id.* at 508. Accordingly, we held that "a defendant may not take one position at trial and a contradictory position on appeal." *Id. Brown,* which articulates the principle of judicial estoppel, is not analogous here because the record is quite clear that defense counsel never requested that the court *not* inquire into whether Sergeant Mercier created Jencks materials. Thus, appellant is not estopped from raising the Jencks challenge on appeal.

Although we consider it distinguishable, we recognize that with respect to whether appellant abandoned his request for Sergeant Mercier's Jencks materials, appellant's case is more akin to *Thorne v. United States,* 582 A.2d 964 (D.C.1990). In that case, Thorne filed a pretrial motion for severance, which the mo-

tion judge did not rule on, and proceeded to trial before a different judge, without bringing the motion to the trial judge's attention. We held that "[a] party who neglects to seek a ruling on a motion fails to preserve the issue for appeal." *Id.* at 965. Here, to the contrary, defense counsel unequivocally requested a "full evidentiary hearing" on the issue during trial, elicited testimony to support his request, renewed his request, and then said he would return to the issue, but neglected to do so. In the unique context of the Jencks Act, the trial court has an affirmative duty to inquire whether the statements exist once defense counsel makes a request for Jencks materials and establishes that the statements may exist. *Lazo, supra,* 54 A.3d at 1232. Here, we recognize that, in light of defense counsel's statement that he would return to the issue and his subsequent failure to do so, it is a close case as to whether appellant waived his right to a Jencks inquiry. However, upon close review of this record, as discussed *infra,* we do not conclude that this misstep was tantamount to a waiver of his Jencks request.

representation that the government has disclosed all Jencks materials. *See Lazo, supra,* 54 A.3d at 1235 ("But simply to accept the prosecutor's representation without conducting any independent inquiry at all into the existence of potential Jencks material from a second officer is plainly not an appropriate evidentiary inquiry under the circumstances."); *Johnson, supra,* 800 A.2d at 701 (The "prosecutor's lack of awareness of any notes did not establish that they did not exist or could not be found.").

We are not persuaded by the government's contention that the trial court sufficiently accommodated appellant's request for an evidentiary hearing by allowing appellant to ask Officer Gallagher questions pertaining to Sergeant Mercier's note-taking during their meetings. This line of questioning merely elicited Officer Gallagher's testimony that Sergeant Mercier took notes during their meetings; it triggered the trial court's duty to inquire further but did not settle the issue. The government also argues that the prosecutor provided additional Jencks material to appellant before Sergeant Mercier took the stand one month later to testify about his measurements of the interview room. However, the record does not indicate what Jencks material the government provided, and even if it did, such disclosure did not absolve the trial court of its "affirmative duty" to determine whether these materials fulfilled appellant's request for all of Sergeant Mercier's notes taken during his meetings with Officer Gallagher. *Bayer, supra,* 651 A.2d at 311.

Finally, the government asserts that appellant eventually had the opportunity to question Sergeant Mercier about his notes, when he testified a month after Officer Gallagher. Yet, the trial court's duty to investigate was triggered when defense counsel requested the notes during Officer Gallagher's testimony. *See id.* (concluding that, at the point defense counsel moved for production of officer's notes and established the existence of these notes, "the trial court should have investigated whether the police officer's notes qualified as a 'statement'"). To require otherwise, by allowing cross-examination to occur without determining whether the statements recorded by Sergeant Mercier existed, would defeat the purpose of the Jencks Act, which seeks to "'aid[ ] the search for truth by facilitating the impeachment'" of Officer Gallagher. *Lazo, supra,* 54 A.3d at 1231 (quoting *Frye v. United States,* 600 A.2d 808, 810 (D.C.1991)). Moreover, expecting defense counsel to wait a month to determine whether Sergeant Mercier had taken notes that included Jencks statements from Officer Gallagher would both shift the burden of inquiry from the trial court to appellant and would require recalling Officer Gallagher as a witness, unnecessarily delaying the trial.

 Accordingly, because we hold that the trial court erred by failing to conduct a hearing regarding the existence of Sergeant Mercier's notes, we must determine whether the error was harmless. To evaluate this error without the alleged notes,

> we must assume the worst: that these notes constituted or included a witness' statement ..., that the statement would have provided serious impeachment material, and that the failure to produce the statement, therefore, would have resulted in striking the witness's direct testimony under [the Jencks Act].

*Johnson, supra,* 800 A.2d at 701 n. 4 (internal quotation marks, citations, and brackets omitted). In *Lazo,* we found that the trial court's error was not harmless because the missing notes were recorded during interviews of the complaining witness, G.F., whose testimony was significant in proving the government's case. 54 A.3d

at 1236–37. We were further persuaded that the error was not harmless by G.F.'s "inconsistent testimony, the conflict between G.F.'s testimony and that of other witnesses, and the suggestion that G.F. had motive to fabricate." *Id.* at 1237. Similarly, here, Officer Gallagher's eyewitness account was critical to the trial court's judgment, it contradicted appellant's own testimony, and at trial and in his brief, appellant argued that Officer Gallagher had motive to fabricate his testimony to avoid punitive action by the government for his own role in Roum's injuries. Officer Gallagher's testimony was especially important because the court did not credit the testimony of Officer Shymansky or appellant, who were the only other direct witnesses to the assault. Moreover, appellant did not have access to any other evidence of statements made by Officer Gallagher during these interviews because the only other participant, the prosecutor, did not take notes. *Cf. Moore v. United States,* 657 A.2d 1148, 1150 (D.C.1995) (finding error harmless "because the information contained in the [missing report] was also available in three other documents which had already been turned over to defense counsel"). Thus, "assum[ing] the worst," appellant was unable to impeach Officer Gallagher with statements that he possibly made during his repeated meetings with the prosecutor and Sergeant Mercier. *Johnson, supra,* 800 A.2d at 701 n. 4. Consequently, we hold that the trial court's failure to investigate whether Sergeant Mercier's notes contained Jencks statements was not harmless.

We remand this discrete issue to the trial court to conduct an evidentiary hearing to determine whether Sergeant Mercier took notes during his interviews of Officer Gallagher and whether such notes constitute Jencks statements. If so, the trial court must determine whether the failure to disclose the Jencks materials was harmless error. Unlike our appellate review for harmless error, which entailed the decision of whether the government's case could stand without Officer Gallagher's testimony, "the trial court can find non-production of the statements harmless, however, only if it finds that the statement could not have been used to discredit [Gallagher]." *Bayer, supra,* 651 A.2d at 312 n. 4. If the failure to produce these statements was not harmless, the trial court must vacate appellant's conviction and order a new trial. *See id.*

2.

■■■■ Appellant also argues that the prosecutor did not provide notes from her interviews with Officer Gallagher to defense counsel, in violation of the Jencks Act. This argument is without merit. When defense counsel articulated this concern at trial, the prosecutor stated that she deliberately did not take notes during witness interviews to avoid creating Jencks material, the court observed, "that is what one would expect of an experienced prosecutor," and defense counsel replied "I think it is." Defense counsel then clarified that he would "focus [his] attention on Sergeant Mercier" and did not raise the issue of the prosecutor's notes again. "[A]bsent compelling evidence to the contrary, when a court receives an assurance directly from the prosecutor—an officer of the court—that she did not take any notes during her interview with a witness, the court satisfies its duty of independent inquiry to determine whether or not the conditions of the Jencks Act have been satisfied." *Lazo, supra,* 54 A.3d at 1238 (internal quotation marks, brackets, and citation omitted). Whereas defense counsel elicited testimony from Officer Gallagher establishing that Sergeant Mercier may have created Jencks materials that the government did not disclose, there

was no testimony suggesting that the prosecutor also created Jencks materials during her meetings with Officer Gallagher and Sergeant Mercier. In light of the prosecutor's assurance that she recorded *no* Jencks statements, defense counsel's acceptance thereof, and the lack of any compelling evidence to the contrary, we conclude that the court did not abuse its discretion by denying appellant's request for the prosecutor's notes.

### 3.

At trial, Officer Shymansky testified that despite making a "diligent" effort to find his handwritten notes, which he transcribed during a meeting with the prosecutor, they were lost. Appellant moved to strike Shymansky's testimony, arguing that his claim "smacks of bad faith" or "gross negligence." The prosecutor responded that it made no sense that Shymansky would have candidly reported their existence if he had intentionally destroyed them. The trial court refused to strike Shymansky's testimony, finding no evidence of bad faith. Instead, the court allowed appellant to cross-examine Shymansky to the extent that appellant desired.

 Regardless of whether Officer Shymansky's personal notes constituted Jencks statements, if the government was required to disclose these notes, the failure to do so was harmless error. *Lazo, supra,* 54 A.3d at 1235. Defense counsel effectively impeached Officer Shymansky regarding the extent to which he was able to observe the altercation between appellant and Roum. Any error was harmless because the trial judge stated when delivering her judgment that "even if his testimony had been stricken, the absence of that testimony would not have made a difference in my verdict." Nor did we rely on Officer Shymansky's testimony in finding

that there was sufficient evidence to support appellant's conviction. Therefore, we are satisfied that "the judgment was not substantially swayed" by the error, if any, and the missing Shymansky notes provide no basis for remand or reversal. *See id.*

### C.

 Finally, we evaluate whether the trial court erred by denying appellant's Motion to Overturn Conviction or for a New Trial based on newly discovered evidence. "On a defendant's motion, the Court may grant a new trial to the defendant if the interests of justice so require." Super. Ct.Crim. R. 33. "To succeed on a motion for a new trial based on newly discovered evidence, the movant has to show that: (1) the evidence is newly discovered; (2) the moving party was diligent in seeking to obtain the evidence; (3) the evidence is material to the issues involved and not merely cumulative or impeaching; and (4) it is of a nature that it would probably produce an acquittal." *Ingram v. United States,* 40 A.3d 887, 901 (D.C. 2012) (internal quotation marks and citations omitted). "The trial judge has discretion to grant or deny a motion for a new trial, and our review is confined to determining whether there has been an abuse of discretion." *Id.* (citation omitted).

 Appellant argues that the trial court abused its discretion by denying, without a hearing, his motion for a new trial based on Officer Gallagher's post-trial testimony at the adverse action hearing before the MPD Disciplinary Board (the "hearing"). During the hearing, Officer Gallagher testified that it was "possible" that he missed a headbutt by Mr. Roum. The following is the most important part of Officer Gallagher's testimony from the hearing:

**Q:** You don't remember seeing [a headbutt] but it's possible?

**Gallagher:** I was a couple feet away from him. I don't remember a headbutt being thrown. From my recollection, I felt like—you know, I had watched the whole thing for the most part. *I do know that I looked down, I do know I looked away at one point.* You know, could a headbutt been thrown at that time, maybe, I don't know. But I mean, I didn't see one, but that's—

Upon consideration of this testimony, the trial judge denied appellant's motion because the evidence was merely cumulative and impeaching, noting that it would not have resulted in an acquittal if it had been presented at trial. In doing so, the judge found that Officer Gallagher's statements at the hearing were "not significantly different" from the statements he made at trial. We agree.

While being cross-examined at trial, Officer Gallagher stated: "I would say I'm paying attention. I mean, I might have glanced here and there a couple of times, but for the most part, yes, I was paying attention ... I don't think I missed a move." Although he testified that he was "very certain" that he never *saw* Roum provoke appellant, Officer Gallagher never testified that an attempted headbutt could not have occurred. Indeed, by conceding that he "might have glanced here and there a couple of times," Officer Gallagher's trial testimony did not foreclose the possibility that he missed a headbutt.

During the subsequent hearing, Officer Gallagher did not change his version of events. Rather, as he had stated during cross-examination, Officer Gallagher acknowledged that he did look away at one point, and that it was possible that he missed something. Therefore, Officer Gallagher was already impeached on the same basis at trial. Indeed, the trial court

already had the opportunity to consider the possibility that the headbutt had occurred, but Officer Gallagher had not seen it. For this reason, the evidence from the hearing was both cumulative and impeaching, thereby failing to fulfill the third prong of the test for admitting newly discovered evidence. *Prophet v. United States,* 707 A.2d 775, 778 (D.C.1998) ("Impeaching evidence is evidence that is relevant only because it undermines or casts doubt on the credibility of a witness."); *see also Gaither v. United States,* 759 A.2d 655, 665 (D.C.2000), *amended by Gaither v. United States,* 816 A.2d 791 (D.C.2003) (declining to consider new evidence undermining eye witness's credibility when eye witness had already been impeached at trial).

Furthermore, Officer Gallagher's testimony during the hearing did not fulfill the fourth prong requiring that the evidence be "of such a nature that an acquittal would likely result from its use" because Officer Gallagher maintained his position from trial that, from what he did see, appellant was the aggressor. As discussed above, the trial judge did not credit appellant's testimony that Roum headbutted him, and we defer to her finding. Finally, appellant's conviction was also supported by the audio recording, which revealed appellant's verbally aggressive behavior during his altercation with Roum.

▮ Alternatively, appellant argues that the trial court abused its discretion by denying his motion without conducting an evidentiary hearing. Yet, we have recognized that the trial court may decide a defendant's motion without an evidentiary hearing if the claims can be disposed of by review of the record. *See Bell v. United States,* 871 A.2d 1199, 1201 (D.C.2005); *see also Busey v. United States,* 747 A.2d 1153, 1168 (D.C.2000) (affirming denial of motion for new trial without a hearing

because "[e]ven assuming that the witness would have testified credibly ... that would not refute directly the substantial evidence" against defendant). Unlike the appellants' motions for new trials based on newly discovered evidence in *Arrington v. United States,* 804 A.2d 1068, 1077 (D.C. 2002), or *Thomas v. United States,* 942 A.2d 1180, 1184–85 (D.C.2008), appellant here did not urge the trial court to consider the testimony of a new witness, whose credibility the trial court had yet to evaluate. Instead, the trial judge had ample opportunity to evaluate the credibility of Officer Gallagher during his testimony, which spanned over many hours. *Cf. Thomas, supra,* 942 A.2d at 1185 (finding the trial court "abused its discretion by making a credibility determination based on the double hearsay affidavit ... without giving [the new witness] the opportunity to testify under oath and without observing her character and demeanor firsthand"). Moreover, defense counsel had questioned Officer Gallagher extensively during trial about his observation of the altercation between appellant and Roum. Accordingly, we hold that the trial court did not abuse its discretion in denying appellant's motion for a new trial without conducting a hearing.

### III.

For the foregoing reasons, we remand to the trial court to conduct an evidentiary hearing to determine whether the government failed to disclose Jencks materials created by Sergeant Mercier and if so, whether the failure to do so was harmless. We affirm in all other respects.

*So ordered.*